Bridgeport Music, Inc. v. et al. v. Tufamerica, Inc. v. et al. Good morning, Mr. Parness. You have two minutes reserved for rebuttal. You can begin whenever you're ready. Thank you very much, Your Honor. I have what I need. May it please the Court, my name is Hillel Parness, Parness Law Firm. I represent Tufamerica, Inc. and K. Lovelace Taylor. They're the appellants today. They were the defendants below, with both sides asserting mirror image declaratory judgment claims against each other, relating to the same set of musical compositions. We have argued on appeal that the Court erred in dismissing defendants' declaratory judgment counterclaims. And we go further and think this Court should also find that the Court erred in finding plaintiffs' declaratory judgment direct claims to be timely. Would you be able to start with the jurisdictional question, do we even have authority? Because I think the big question for me, at least initially, is do we have jurisdiction over this? If we don't, one option, I think, would be to potentially either dismiss it or remand it to the district court and see if the district court wants to give a Rule 52B certification. Because you can't have interlocutory appeals if there's a certification. But why is this? I know it doesn't line up with any particular facts and cases, but I know your briefs, you kind of say it's more like Purdy. But it's not exactly. It's not exactly. Absolutely. Why? And I'm not making a joke here, but I think the thing that feels so strange about it is that we are aligned and in agreement with each other, whereas in usual conditional dismissal cases, it is the plaintiff who's saying, because I've done this, I'm dropping my last claim for the chance of asserting all my claims, with the defendant usually saying, no, no, no, no, we want to make them go through the steps. No, we're delighted to see how happily you're getting along. Well, that's what's so weird about it. But I guess my question is, why is this? Let me frame it sort of rhetorically as a challenge to why we don't have jurisdiction. In Purdy, it's the plaintiff who says, look, I came into court. I have a bunch of complaints. I'm going to drop this. I'm going to risk everything. I'm either going to win big or go home. Here, it's a little bit the other way. You're saying either they're going to win big, right, because that's the whole idea. How does it go? Now I'm getting confused as to who's the plaintiff. I think we've both given it a lot of thought, so I'm happy to give it a try, Your Honor. But it seems to me that the party who has voluntarily dismissed their claims here is saying, if my opponent wins, I get to revive my claims. So it's not sort of saying, like, I've come in. I, the person who has dismissed my claims, am seeking relief from the court, but if I don't get it, I'm willing to pack it in for the day. But here, it's the opposite. It's saying, if my opponent wins, well, then I want a second chance at this. I think there are two ways to look at this, Your Honor. There's not one party who's rolling all the dice and saying, I either win on everything or I lose. Well, that is correct, I think. But I think there are two ways to look at it. One way is actually very straightforward, and I think the district court looked at it exactly this way, which is normally the plaintiff dismisses one claim saying that if the plaintiff prevails on appeal, the plaintiff's claim will be revived. Right. And the defendant gets dragged along with that, whether they like it or not. Here, the plaintiff's dismissing his one claim on the condition of if defendant prevails. So the district court looked at that and said, it shouldn't matter whose appeal we are waiting on. It's the same outcome. The whole point of purdie, if the court affirms the dismissal of the claims being challenged and the case is going to be over, then finality is not implicated. There's no problem because it will be over. Whose claims they are doesn't really matter for purposes of the purdie announcement. What matters is if we affirm the dismissal of the claims that are being challenged, it's an end to the litigation. If there was some way for some party, either party, to resurrect other claims, if we were to affirm the dismissal, that would be problematic. Right. And that's why the Scottsdale case, Your Honor. Scottsdale, I believe. That's why the Scottsdale case. I know it was your case, Your Honor. We distinguish that because in that case, this court noted that the condition that had been placed there was actually an insurance policy for the insurance company, which is if either of the cross appeals succeeds, they get to revive their claim, and that's why it wasn't final. Here, plaintiff, the plaintiff who in this case is sort of the natural defendant, if plaintiff is saying I am risking my direct claims subject to defendant's appeal, defendant is also running the same risk. We don't. Somewhat relatedly, I mean, this is not like Purdy in the sense that this is like a quiet title action, and who has a live claim to being the owner and a possible enforcer of copyright in the related compositions. And as part of this general jurisdictional discussion, I had trouble understanding why your client's claim having been found barred, your infringement claim barred by the statute of limitations, why your opponent's motions for summary judgment or declaration of their own ownership rights aren't moot, because there's no one to fight against. I didn't see, understand why there would be trial. So much like in Kwan, the opposition was gone. The live dispute was gone, which really as a practical matter rendered this a final judgment, and we could go forward and look at whether the statute of limitations decision was correct. And then if we decide it's not, the litigation is revised. Otherwise, your opponent goes away. In fact, Your Honor, I was just pulling out Kwan because the language in Kwan was said it was a purely defensive claim. Yes. That all that was left was a purely defensive claim. And I think actually my opponent, who will probably stand up and talk about this, he's actually made this, I think, an argument either similar or the same as what Your Honor is saying, which is, and he made it to the district court, that it's already final because it's mooted the plaintiff's claim. So I think he. But the problem is the district court didn't dismiss it. Well, that's correct. Had the district court dismissed it as moot, then we would have all claims resolved. But the problem is the district court kept it alive. That's correct. Well, the district court might have been in error. Well, right. But the problem is, right, that happens all the time, right? District court denies summary judgment. The case is alive. We're not allowed to step in and say, well, you should have. Right. Because we have to wait for it to be over before we can say there was a mistake. I guess if the district court had done that, let's say the district court had agreed. He said, you know what, it's moot. But it's not really sort of moot for all time, right? Because if we were to disagree on the statute of limitations question, you know, would that have been the situation where the proper procedural segue would have been district court finds your claims barred in the statute of limitations, then dismisses the counterclaims as moot, and then there's the final thing, and then you appeal, and then your opponent has a conditional cross-appeal or something like that. I mean, I know it winds up being hyper-technical, but is that sort of how it would have played out? Let's say if the district court had agreed. If the district court had agreed that it was moot. Well, then we dismissed one side's case as time barred, then the proper thing would have been to dismiss the other as moot, but would have then allowed them a conditional cross-appeal? Well, I think that that would have been a final decision at that point. Right. And I think that. And that's in Quan, right? I mean, we said it was an abuse of discretion for the district court to dismiss without prejudice the remaining claims to copyright. Well, actually, in Quan, the district court's, I'm reading here at page 232. It's right at the end. District court's conditional dismissal of the counterclaims took this explanation into account, and we find no error therein. Right? So that what the court was saying right before it, the court was, the district court was entitled to accept that the counterclaims were purely defensive, asserted only in response. Once summary judgment was granted, they had no reason to continue to pursue their claims. That's what motivated our shocking cooperation is that we were both, neither of us had a motive to go to trial.  I had a motive to get to an appeal, and he had no motive to, nothing to prove. So it could have been framed otherwise. The district court could have as opposed to endorsing your conditional dismissal. But I, well, I do think that Quan was a conditional dismissal. I think it was the same posture here, unless I'm mistaken here. Well, it was the same posture, but we affirmed the district court's dismissal of the counterclaims under 41. Right. Even though it was without prejudice. Because it, well. Because acknowledging that they could be refined. Well, it was a conditional dismissal. It was the same that's happened here. The very last. It's the same. It's practically the same effect. Right. Right? So, again, to that point, I think, I think the way that I read Quan is that what happened in Quan is also what happened here, although perhaps I don't understand the nuance because it's not, it's not there. No, no, no. I think we're agreeing. I think we're agreeing for the same thing to happen here as well, which is there is finality. Both sides are taking risk. And, in fact, as I point out in my, in my letter, the, my opponent here is actually taking more of a risk than a natural defendant would normally take because he's actually risking having to go to trial with all these claims. So I guess one of the questions I have is, this is very complicated. You know, we've got Purdy, and then we get spun up in Stott scale with these other permutations. Now, we've got yet another permutation. Hasn't Congress given us the easy answer that a district court can certify something as a partial or final judgment? It just comes up to us. Why should we start creating all these judicial doctrines that we're going to hair split? There's going to be yet another permutation in the future with, God help us, an intervener or a third party claim. And, you know, Congress has told us it's really easy. Wait until the whole shebang is done. And if you don't want to, well, then, you know, district court, in the exercise of its discretion, can say, look, I'm going to certify this because, gosh, it's going to take a machete, cut through all the red tape, let everybody expedite this one appeal, and I'm certifying that that's going to make a lot of sense. It's going to expedite the litigation. Why should we start creating these convoluted doctrines? Because I think it was in Scottsdale that recognized we're an outlier among the circuits, even with Purdy. So why should we be starting to pile exceptions upon exceptions and get ourselves into knots when the easiest thing would probably be ask the district court. Did you ask the district court under 52B to certify this? I did not ask to certify. I asked for an introductory appeal. I don't have it in front of me. But you didn't ask for whatever it is, a certification of partial or final judgment. I did not. I don't know if my opponent did either, although I do think he raised the concept that we're talking about. I guess I'm wondering if there's a rule in place that allows us to do this nice and easy, why should we be creating all sorts of convoluted doctrines that we tease out every time there's a new permutation? Well, with respect, the Second Circuit is an outlier, but it's been a very consistent outlier for a long time. No, and again, I've employed it. I've had it employed against me. And I've come before this court on cases where we've done – so we were relying on that doctrine. Let me ask you about the merits. Sure. Why didn't the claim accrue when Mr. Taylor was working as a DJ in Detroit decades ago and the recordings were played on the air and that was undisputed? I know you're saying it wasn't supported by the record, but the district court in the motion of reconsideration went through how the deposition of – and the declaration of Vellodian did support that. So why isn't that the proper analysis?  So, again, we say it wasn't – well, first of all, I don't think that sentence gets the court where it needs to get, even the sentence standing alone. That's what I want to hear because I'm skeptical that you're not bound by that. So let's assume you're bound by that. Why doesn't that support the district court's decision? Well, I think that the clearest way to see it – and, again, in our opening brief, we said there's not support. I think the clearest way to see it is that paragraph 20 of – which is the paragraph that we're – that in question here, and that's on page 603 of the record, is backed up by Mr. Vellodian's testimony on page 226 of the record. And what he says on page 226 of the record, it says, I've known him, you know, before even at the record label because he was a DJ. We would take records over to promote them. So the sequence here is the – he's saying it's before the record label. It's before Revilot, before – I thought the – you're just saying that there wasn't record evidence to back up the admission in the Rule 56 statement? I am saying that, and I'm also – I thought we were at the point of saying, assuming you're stuck with – Assuming Mr. Taylor worked as a radio DJ in Detroit and played the recordings on air, why that wouldn't preclude – Assuming you're stuck with that. Well, there's no date on that statement. There's no date on the statement in paragraph 20 about when that occurred. And what I'm saying is to get that date, you have to go to his testimony, which is on page 226. How long has he been dead? Mr. Vellodian's still alive. Mr. Taylor is deceased. Mr. Vellodian, who testified, is alive. The one who played the records? No. That – he's been dead since 2000, I believe. I mean, by definition, it's before he died that he was playing the records, right? Well, absolutely. We're talking the 70s and the 60s at this point. Right. So I guess I'm assuming that – No, we know – we know – No, it's a question of if my clients are the successors in – the theory is that my clients are the successors in interest to Mr. Taylor. Right. If Mr. Taylor heard them in – let's say he heard them the day before he died, you're still – it's still too long. I don't think that's the case. I mean, unless my clients inherited everything Mr. Taylor knew. The point here is that they're saying that Mr. Taylor heard them. But paragraph – I understand your question. I'm sorry. Let me rephrase. Paragraph 20, when you go to the source of Mr. Taylor, he is actually testifying about a period of time before these records existed, before the records came into being. Because he says on page 226, before even at the record label, before Mr. Taylor, the deceased Mr. Taylor, was at the record label, Revlod, where his records, the older records, the ones that my clients say are the real ones, before those were even created, he was – before he was at the record label, we would take him records over to promote. So it cannot be the second round of records that were created later. It has to – it's something else. You would take him records. They can't be the six at issue here because those didn't exist. All right. And what about what happened in 2011? Why isn't that also – So in 2011, when he goes to the widow to purchase – when my client goes to the widow to purchase the rights, what she was telling him was she didn't have paperwork showing her ownership. She did not tell him there is someone else claiming ownership. There is no express or implied repudiation there. That's – our position is that that is not what the Second Circuit is referring to when it talks about any kind of repudiation. When you go to somebody and say, I want to buy these things from you, and the person says, well, I don't have the paperwork showing that my deceased husband transferred them to me, right, she's the executor of the estate on behalf of herself and the children, et cetera, that is not express repudiation. Express repudiation or implied repudiation would be if she says, well, there's been this other guy sniffing around who says that he owns them. That's not – there's no evidence to that. The only evidence is that when she was selling – when the widow was selling to my client – actually, they're both my clients – when the widow was selling to Tough America, she was saying she didn't have her paperwork in order about her ownership. That is not repudiation. All right. Thank you. I'm way out of time, but I'll reserve it. We went down the jurisdictional rabbit hole. Well, I knew we might. I knew we might. I was going to – in fact, I was going to offer to go to her. Give her both. Thank you, Your Honor. Good morning. May it please the Court. Richard Bush on behalf of the Bridgeport and Westbound. Your Honors have it exactly right on the substance. I think the procedural issue was discussed initially. But on the substance, Your Honors have it completely right. There are multiple reasons in this record to affirm the district court's decision and also to dismiss the case. We made other arguments besides that. I'll mention them briefly after. Are you trying to dismiss the case? Us dismiss the case? No. Why the district court dismiss the case. Dismiss the case. So there are multiple reasons in this record. And I'll just address the point that Your Honors made a second ago. So on the statute of limitations, Mr. LeBaron Taylor is deceased. He deceased in the year 2000. He previously in the 1960s worked for a record label, Revlot. And after Revlot went bankrupt, Mr. Bouladian at Bridgeport Music and Westbound Records created the recordings of these compositions. And what Mr. Bouladian says actually in his affidavit, paragraphs 15 through 17, was that he would take Mr. Taylor, the Westbound Recordings, which were created after Revlot, the previous record label that Mr. Taylor was involved with, went bankrupt, and Mr. Taylor would play those Westbound Recordings containing these very compositions. That's what the district court said. That is knowledge. That is repudiation. In addition to that, the case law that we've cited makes it very clear that if Mr. Taylor thought that he owned the compositions, he would have been expecting royalties. And the record is very clear that it was Bridgeport and Westbound receiving the royalties. Bridgeport recorded these or registered these compositions with BMI. And he was receiving, Bridgeport was receiving the royalties, not Mr. Taylor. So Mr. Taylor knew, A, Westbound released these compositions, and, B, it was Bridgeport who registered these compositions in the early 1970s with BMI and was collecting royalties. So I think Mr. Taylor was suggesting, I wasn't quite understanding, that these aren't the recordings that are at issue here. No. With all due respect, that's mistaken. So as I said, first of all, there were — we don't know if the earlier recordings were ever distributed or released or — there were earlier recordings. What we know is that Westbound Records, which is Bridgeport Music's sister company, Westbound being the record label, Bridgeport being the publishing company, it was Westbound Records that released these recordings in the late 60s, early 70s, after Revlot, which Mr. LeBaron Taylor was involved with, the record label, went bankrupt and he — and Mr. Taylor became a DJ in Michigan. He was very good friends with Mr. Bladian, as Mr. Bladian testified. And he would bring Mr. Bladian to Mr. Taylor the Westbound recordings to play on the radio. And Mr. Taylor never claimed, hey, I own the compositions underlying these recordings. Why am I not getting royalties? Didn't say a peep. And Bridgeport, as I said, registered these compositions with BMI. That is repudiation. Furthermore — So your — your point, what happened in 2011, you would argue, is not — is just Exactly. So they stand in the shoes, meaning Tough America stands in the shoes of Mr. Taylor, what his knowledge was. And the record is undisputed that, A, Mr. Taylor was a seasoned record executive who would understand he would be getting royalties if, in fact, he owned the compositions. And he did. The case law is very clear on that. Secondly, the failure to receive royalties, the case law we cite in our brief, very clear. If you're not receiving royalties, you think you should. That's the Cole case, the Bob Marley case that we cite, and other cases. Then that is repudiation. Third, he — they knew that it was registered. Mr. Taylor and Mr. Belladion registered the copyrights with BMI. That puts you on notice. So for all those reasons, the district court got it absolutely right. Now, let's — Can I just ask a clarification about the Rule 56 statement? Yes. Just so I'm reading it right, because my understanding is the district court, and I think I'm looking at the right page. You tell me if it's wrong.  Page 603, the appendix. It's paragraph 20. The stipulation that was said undisputed to was Mr. Taylor worked as a radio DJ in Detroit and played the westbound sound recordings in air. Westbound sound recordings are capitalized, and that appears to me to be a defined term according to paragraph 5. So it's not just some sound recordings by westbound, but it's specifically these particular compositions, sound recordings by Mr. Clinton of these particular songs. That's exactly right. So westbound sound recordings is capitalized, and it's a defined term to me. It's not just some records from westbound. Exactly. And that was admitted to by the — by South America. Would you — Undisputed. Spend some time on the jurisdictional issue. Okay. So on the jurisdictional issue, the point that we made, by the way, the point that we made, and it's the Quan case, once the district court ruled that Tough America's claims were not viable, they were barred by the statute of limitations, they — the district court lost subject matter jurisdiction. That's the Nike case, the all-bound Nike case. But it didn't dismiss it for that reason. It didn't. But once you lose subject matter jurisdiction, my question just — I guess it's rhetorical or maybe it's philosophical, is can you even — the case should be over at that point as a matter of law. But it's not if he hasn't dismissed it. I mean, he could have gone forward with a trial. You could later argue he shouldn't have. But it's not final until a court dismisses the claim, right? I guess my — I guess my response to that would be that it is a bit — it's a ministerial thing. Like, Your Honors could send it back to say you didn't have — or say we don't think you had subject matter jurisdiction once the — Well, let's say you — You denied the claim. Let's say you hadn't traditionally dismissed this, right? And there was an appeal. Yeah. And one side says these are not time-barred, and the other side says the district court erroneously failed to dismiss my case — this case. We wouldn't have jurisdiction over that because it's not final. It's not pending. But that's — but that's not what happened. And I think — No, no, no. I'm asking in the hypothetical. In a hypothetical, if there was still a — if the Purdy doctrine did not apply and the Court did not dismiss the case, allow for conditional dismissal under Purdy — I'm saying assume the district court never dismissed the claims or counterclaim. Right. You're telling me that you could come up here and complain about a failure to dismiss? No, of course not. I'm not saying that. But what I'm saying is that that's not what happened. The Court did dismiss under Purdy, and it's the same — the same principle that underlies Purdy applies. You sought authority to appeal under 1292, but you didn't do a, like, Rule 54B certification request.  We did not. So that would have been another way to proceed, right? It would have been. To secure our jurisdiction. We raised two things. One, lack of subject matter jurisdiction, as you saw in our exhibit. One, to our submission. And two, the Purdy doctrine. Am I right that the district court never exactly ruled on your mootness claim? Did not. If we would have not wanted to extend Purdy to this situation, what are you going to do? Are you going to just move under 54B? What are you going to do? If you don't want to — We say we don't think this is covered by Purdy. It's not exactly the same thing as Purdy. Judge Nardini suggested just we're not going to extend Purdy to this situation. And then you remand it back to the district court. I guess at that point, we would ask for the things Your Honor is suggesting could have been done. Would you speak to Quan, though, which kind of has the same elements, I think, in terms of the district court allowed the dismissal under Rule 41, right, for dismissal without prejudice of remaining claims. And the same kind of dual — this is like a quiet title action. This is not like a Purdy or someone seeking a liability determination. These are competing ownership claims. If one is barred, in my view, you know, the dispute is over. I think that's right, because the law in the Second Circuit is also that there is no absolute — there's no actual right to a declaratory judgment claim without an underlying copyright infringement component to it, which means that Your Honor is correct that in the event that once the copyright infringement matter was dismissed, then the whole thing and the ownership claim by Tough America, then the whole thing should have gone away. Similarly to the sneaker case. Yes. There was a covenant not to sue, and the dispute was gone. Exactly. In our view, that's analogous. And then what would have been the proper posture on appeal? An appeal by one party saying, hey, my claims aren't time-barred, and then a conditional cross-appeal by the other parties? Because you want it. Yeah. If the other side wins, you want your claims back. That sounds — that sounds correct. That sounds correct. So if I can just say one last thing, because I — you know, we do have other — I'm not sure if Your Honors are going to get there or not, but we do have — I'm not going to get there in 20 seconds. Can I have 20 more seconds to say something? Okay. In 2011, Ms. — they bought the compositions for $6,000. Ms. Taylor told them — this is basically a quit claim. They took out warranties and representations. They — he did no copy — he was put on notice that there might be other claimants out there. She had no paperwork whatsoever. And — It's not quite the same level of repudiation that we normally talk about. The fact that she didn't have paperwork doesn't necessarily mean that there's someone else — It's not — it's not a repudiation issue, though, because in 2011, the issue is, and the standard is, that a copyright ownership claim accrues when someone — let me read the language, if I could — when a reasonably diligent plaintiff would have been put on inquiry notice as to the existence of its right or existence of a right. So they were actually put on inquiry notice by the lack of paperwork, by the lack — she didn't have any ownership. It wasn't in his will. There was no intellectual property left to anyone in the will. And he basically said, I was going to do a copyright search. What should they have done at that point, then? He should have just checked BMI website. It said Bridgeport Music. That's all he had to do. And he said it was too busy. Basically said, I'm too busy. I was too busy, so I didn't do it. All right. We'll go to you, Mr. Farnes. Thank you. Two minutes. Thank you, Your Honors. Starting from that last point there, inquiry notice, we agree that that's — in fact, it's not inquiry notice. It's inquiry, is the language from the case law. But the courts have interpreted inquiry to manifest itself in three possible kinds of repudiation. It's always about repudiation. Whether it's expressed or implied, it's always about repudiation. There are three different kinds there. As far as the failure to receive royalties, I think we're mixing up two different doctrines here. And we spent some time in our briefing talking about this, that the Wilson case, which the judge below cited to support his position, actually tells us the opposite, that what we have when a copyright registration — and this feeds into — I know I'm not going to get to why the judge should not have found the plaintiff's claims timely, although if I have time, I'll try to. I'm not going to do that today. But it still matters. It matters because what the Wilson case showed is that — and the policy behind Wilson that is expressed there in the first opinion and the hearing decision is that a — someone who has a registration, somebody who is what I'm calling in my briefs the senior registrant, does not have a burden to check, to see if other people try to jump on their claims. And that's what we have here. It's undisputed. My client had the earlier registrations. I didn't see that senior — that registering argument to the district court. Did you make that in the district court about the senior? We did not because — well, we made a similar one. No. Excuse me. We did not because, first of all, it wasn't our motion. But second of all, the issue — the issue of plaintiff's timeliness was not at issue. There was only one motion for summary judgment. I thought the district court did rule on the timeliness of plaintiff's — The court did, but — It was an issue. Well, plaintiffs had not asked — it wasn't until the court's decision that this issue even came up. And then there was the motion for reconsideration. Did you raise it at that point? In the motion for reconsideration, we did start talking about this issue. I don't know if I called it senior, junior. But we certainly — but, again, I shouldn't be penalized for — I don't think I should be penalized for making a motion for reconsideration, which I did not have to make. The question is whether it was a summary. When was the issue of senior registration? When was that argument first fully presented? I think it was first fully presented on appeal because I was criticizing the lower-course decision. It hadn't come up in the briefings. The other reason why this 1970s issue is important and not waived is plaintiffs did not move on the 1970s issue. That was the judge's own conclusion. There was no briefing below saying that the claims were timely — the claims had, you know, started to run in the 1970s. Plaintiffs argued the claims ran in 2011. That was their only argument below. It was the judge himself who brought this thing up, which — and it was because of that, in part, that Paragraph 20 did not resonate. It had not been cited by the plaintiffs in their summary judgment papers as support for the untimeliness. But I want to be clear. I am willing to say that, in hindsight, Paragraph 20 should not have been conceded, although with the relevant — the only person relevant who could dispute it being dead for 24 years. I'm not sure what I could have done under that situation. What I will say, and I've given you the case law on this, whether it was counsel's oversight or not, and I'm willing to recognize it might have been, whether it was counsel's oversight or not, there's case law out there that says that whether you admit it or whether you don't even put in a 56 response, if the evidence doesn't support the proposition, then the court should not be granting summary judgment on that. Thank you, Mr. Parnes. Thank you, Mr. Bush. We'll reserve decision. Have a good day.